UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIO MOSES MONTALBO,

Petitioner,

v.

S. FRAUENHEIM, Warden,

Respondent.

Case No. 15-cv-05372-HSG (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK**

Petitioner has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction.[1]  Respondent has filed an answer to the petition, and petitioner has filed a traverse.  For the reasons set forth below, the petition is denied.

## I. BACKGROUND

In 2011, petitioner and a co-defendant, Valentin Mata, were found guilty by a jury in Santa Clara County Superior Court of two counts of assault with a deadly weapon.  The jury found true the allegation that Mata personally inflicted great bodily injury on one of the two victims, and found not true the allegation that petitioner personally inflicted great bodily injury on the other victim. CT at 436-349, Ex. 1.[2]  The trial court found true the allegations that petitioner suffered three prior strike convictions: two for assault with a firearm and one for making criminal threats. CT 352-353; RT 1139-1146, Ex. 3.  Petitioner was sentenced to a term of 30 years to life in prison.  (CT 613-621.)

Petitioner appealed the conviction.  The California Court of Appeal affirmed the conviction in an unpublished opinion on June 2, 2014, and as modified on June 6, 2014.  Exs. 7 and 9.  On August 20, 2014, the California Supreme Court summarily denied review.  Exs. 12 and

---

[1] The matter was reassigned to this Court on April 24, 2017.  (*See* Docket No. 24.)

[2] All references herein to exhibits are to the exhibits submitted by respondent in support of the answer, unless otherwise indicated.  References to "CT" and "RT" are to the Clerk's Transcript and Reporter's Transcript of the state proceedings.

13.

On August 13, 2015, petitioner filed a habeas petition in the California Supreme Court, which denied the petition on November 10, 2015. Exs. 14 and 15.

Petitioner filed the instant federal habeas petition on August 13, 2015, raising the claims from his direct review and state habeas petition.

## II. STATEMENT OF FACTS

The following facts are taken from the opinion of the California Court of Appeal on direct appeal[3]:

At about 1:00 a.m. on February 20, 2010, Jeffrey Aana and Yusuf Ali Smith left a bar at Third Street and East Santa Clara Street in downtown San Jose and headed west on East Santa Clara Street toward Aana's car, which was parked near Santa Clara Street and San Pedro. As they passed 75 East Santa Clara Street, they encountered a group of three Hispanic men and two Hispanic women walking toward them from the opposite direction. One of the women asked if they had a lighter, and Aana said "No. I don't smoke." One of the men in the group responded: "Fuck you then, nigger" or "[p]unk-ass nigger." Smith is African-American, and Aana is Hawaiian/Filipino. Smith turned around and said "'Excuse me? What?'" "'What did you say?'" A portion of this first encounter between Smith and Aana and the group of five was captured on video by a surveillance camera.

A short man with closely cropped hair and a thick build was wearing a long-sleeved white sweater approached Smith, repeated his comment, and tried to punch Smith. Smith avoided the punch and punched the man, who was Montalbo. Smith proceeded to fight with "a taller dude" who was slender and whom Smith subsequently identified as Mata. [FN2] When one of the women interjected herself, Smith hit her in the face, and she fell to the ground. The third man, who did not engage in the fight with Smith, was shorter and thinner than Montalbo and was wearing a hat. Aana was not hit during the fistfight, which was "broken up… within second." Smith was also uninjured in the fight. Aana and Smith resumed walking toward Aana's car. After Aana and Smith walked away, the video showed the group of five gathering together and apparently conversing before reversing their direction and following Aana and Smith. A group of police officers was nearby, and their attention was drawn to the commotion. When the police approached, they saw three or four men run westbound across Second

---

[3] The Court has independently reviewed the record as required by AEDPA. *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017). Based on the Court's independent review, the Court finds that it can reasonably conclude that the state court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2014), unless otherwise indicated in this order.

Street toward First Street, which was the direction in which Smith and Aana had gone.

> FN2. Montalbo would never be described as tall or slender. A surveillance video showing him leave the scene depicts him as a stocky man of medium height. The evidence at trial established that Mata was taller and significantly thinner than Montalbo.

Right after Smith and Aana crossed Second Street toward First Street, they heard yelling behind them and turned and saw the three men running "[f]ull speed" toward them from behind. Aana backed up into a doorway so that he could protect himself. Smith was on the street side of the sidewalk near 35 East Santa Clara Street. Two of the men approached Aana, and he felt something hit his chest. One of them grabbed Aana's arms and said "'I got you. I got you.'" Meanwhile, Montalbo ran up to Smith, and he and Smith began hitting each other. Montalbo fell over, and then Mata, who had been over by Aana, "just lunged into" Smith. Smith hit Mata, and Mata fell over. Montalbo then "threw his body into" Smith. Smith did not see any weapons and did not feel himself being stabbed at any point during this fight. Smith did feel Montalbo punch him in the chest in the same location where he subsequently noticed he had a stab wound. Smith had no contact with the third man (the one who was short and thin and wearing a hat).

Police officers in the area noticed this second fight. A police officer saw Montalbo punch Smith in the center of his upper chest with his right hand, and he heard a "clinking sound" on the ground like something heavy and metal was being thrown on the ground. He yelled at the men to stop, and they separated. A Hispanic woman nearby with a bloody cut on her face told the officer that Smith had hit her and that Montalbo was helping her. Montalbo was wearing a white-long-sleeved shirt. Montalbo embraced the woman. The officer told Montalbo to move away, and Montalbo left eastbound. Aana noticed blood dripping from his body and realized that he had been stabbed. The two men who had confronted Aana had "disappeared." Aana told a police officer that he had been stabbed and that a Hispanic man wearing a white shirt had a knife. Smith thereafter realized that he had been stabbed in the left side of his chest and that his neck had been slashed.

When the police realized that Smith and Aana both had stab wounds, they pursued Montalbo and took him into custody. Smith identified Montalbo at the scene of the stabbings as the short, thick man he had been primarily fighting. Mata was stopped by police nearby as he was walking away from the scene of the stabbings. His right hand was bleeding profusely from a cut on his thumb, and his clothing was covered in blood. He told the police that a black man had punched him in the face. A folding knife with Mata's blood on it was found in a corner of a doorway at 35 East Santa Clara Street. There was also blood on the ground and on the wall at that location. Aana's DNA was not detected on the knife. Mata's DNA was on the handle, blade, and tip of the knife. Smith's DNA was found in bloodstains on Montalbo's shirt.

Both Aana and Smith were taken to the hospital. Aana had a wound in the left side of his chest that was six inches long and had caused his lung to collapse. His wound required surgery, and he was hospitalized for several days. Smith's wounds, while less serious, had also caused his lung to collapse. His wounds were stapled closed, and he was released from the hospital after two hours. Smith identified Mata at the hospital as the taller, thinner man who also had been fighting him.

*People v. Montalbo et. al.*, No. H038197, slip op. at 2-5 (Cal. Ct. App. June 2, 2014), Ex. 7 (hereinafter "Op.").

## III. DISCUSSION

### A.    Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Clark v. Murphy,* 331 F.3d 1062, 1069 (9th Cir.), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. The federal habeas court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, as noted above, the California Supreme Court summarily denied petitioner's petition for review. *See supra* at 2; Ex. 13. The California Court of Appeal, in its opinion on direct review, addressed claims one through four in the instant petition. Ex. 7. The Court of Appeal thus was the highest court to have reviewed those claims in a reasoned decision, and, as to those claims, it is the Court of Appeal's decision that this Court reviews herein. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

Petitioner raised claims five and six for the first time in a habeas petition before the California Supreme Court, Ex. 14, which denied the petition with citations to *People v. Duvall*, 9 Cal.4th 464, 474 (1995), and *In re Swain*, 34 Cal.2d 300, 304 (1949). Ex. 15. Accordingly, it is that state high court's decision which is subject to review with respect to those two claims.

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. *See Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (per curiam); *Harrington*, 131 S. Ct. at 783-85; *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Id.* at 1307 (citation

omitted).  With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

**B**.     **Claims and Analysis**

Petitioner asserts the following grounds for relief[4]: (1) there was insufficient evidence to support the conviction for assault with a deadly weapon, Pet. Attach. at 5B (claim two); (2) the trial court erred in jury instructions regarding aider and abettor liability and natural and probable consequences in the absence of sufficient evidence in support thereof, *id.* at 5B (claim three); (3) the trial court erred in instructing the jury on aiding and abetting by misstating the elements of the charge, *id.* at 5A (claim one); (4) cumulative prejudice, *id.* at 5C (claim four); (5) his right to due process and a jury trial were violated when the trial court failed to strike prior strikes which stemmed from a single act, Pet. Ex. A at 3; and (6) ineffective assistance of appellate counsel for failing to appeal the trial court's error under claim 5, *id.* at 4.

**1.     Insufficient Evidence**

Under claim two of the petition, petitioner claims that his conviction was unsupported by sufficient evidence in violation of due process.  Pet. Attach. at 5B.  Specifically, petitioner claims that the evidence did not support the theory that the assaults with a deadly weapon were the "natural and probable consequences of simple assaults."  *Id.*

The state appellate court reviewed what occurred at trial with respect to this claim:

> The prosecution's theory at trial was that Mata had stabbed Aana, Montalbo had stabbed Smith, and they had each aided and abetted the other's assault with a deadly weapon.
>
> Montalbo's trial counsel objected to aiding and abetting instructions on the ground that there was insufficient evidence to show that, if Montalbo was not the stabber, he knew that the perpetrator intended to commit a stabbing.  He conceded that if the jury found that Montalbo stabbed Smith there would be sufficient evidence to find that Montalbo aided and abetted the stabbing of Aana.  Mata's trial counsel joined in this objection.  The court found that there was sufficient evidence to support the aiding and abetting instructions (CALCRIM Nos. 400 and

_____

[4] The claims are re-ordered in the manner addressed by respondent in the answer rather than the order presented in the petition.

6

401).  Both defendants also objected on the same basis to the instruction on the natural and probable consequences theory (CALCRIM No. 403).  The court overruled the objections.

The court instructed the jury: "You must separately consider the evidence as it applies to each defendant.  You must decide each charge and allegation for each defendant separately."  The jury was instructed with CALCRIM No. 400: "A person may be guilty of a crime in two ways.  One, he or she may have directly committed the crime. I will call that person the perpetrator.  Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.  A person is [equally] guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it.  [¶]  Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.]"  (Brackets in original.)

It was also instructed with CALCRIM No. 401: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶]  1. The perpetrator committed the crime; [¶] 2.  The defendant knew that the perpetrator intended to commit the crime; [¶]  3.  Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.  [¶]  Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

The jury was instructed with CALCRIM No. 403 on the natural and probable consequences theory.  "To prove that the defendant is guilty of Assault with a Deadly Weapon under the Natural and Probable Consequences theory, the People must prove that: [¶] 1.  The defendant is guilty of Assault; [¶] 2.  During the commission of Assault, a coparticipant in that Assault committed the crime of Assault with a Deadly Weapon; [¶]  AND [¶] 3.  Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the Assault with a Deadly Weapon was a natural and probable consequence of the commission of the Assault.  [¶]…[¶]  A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.  If the Assault with a Deadly Weapon was committed for reason independent of the common plan to commit the Assault, then the commission of Assault with a Deadly Weapon was not a natural and probable consequence of Assault."  The jury was also instructed on simple assault as a lesser included offense of assault with a deadly weapon.

Montalbo's trial counsel argued to the jury that there was no evidence that Montalbo knew that weapons would be used.  He also argued that a stabbing was not a natural and probable consequence of a simple assault because there was no evidence that Montalbo knew either of the other men had a weapon.  He argued

that one of the other two men had stabbed both Smith and Aana. "I'm not saying Mr. Montalbo's not involved… What I'm arguing is there's no evidence that Mr. Montalbo signed up for a stabbing." "He did hit Mr. Smith."

Mata's trial counsel argued that the knife did not implicate Mata in the stabbing of Aana, despite Mata's blood and DNA on the knife, because none of Aana's DNA was found on the knife. He also argued that Mata was not the taller man fighting with Smith because Smith had described that man as being a few inches taller than Mata actually was. Mata's trial counsel argued that the knife had not been proven to be connected to either stabbing, and the third man had not been accounted for. He theorized that, during the altercation, Mata had been cut by someone else with the knife. Mata's counsel argued that Mata had not even committed a simple assault.

The prosecutor addressed the natural and probable consequences theory during his closing argument: "Well, the natural and probable consequences, with that theory, you don't have to prove or find that the person, the defendant, knew that the other participant in the crime of assault had a weapon. You don't have to make that finding." Defense counsel objected, and the court sustained the objection. However, the prosecutor immediately proceeded to argue pretty much the same thing without objection. "Ladies and gentlemen, take a look at the instruction number 403 about natural and probable consequences. There's nothing in there that says I have to prove to you that the defendants, Mario Montalbo or Valentin Mata, actually knew that their coparticipants possessed a deadly weapon. The knowledge element relates to what a reasonable person would foresee in terms of a probable consequence to the commission of a simple assault."

The jury deliberated for two days. During its deliberations, the jury sent out a series of six notes. The first two sought read backs of the testimony of Aana and Smith about the second fight, and the read backs were provided. The third note said: "'The crime of assault is a lesser included offense of the crime of assault with a deadly weapon.' [¶] Can this statement be clarified and explained to the jury." The court responded by suggesting that the jury look at three instructions: an attached jury instruction "regarding lesser included offenses" that was taken from CALJIC No. 17.11, CALRCRM No. 875 on the elements of assault with a deadly weapon, and CALCRIM NO. 915 on the elements of simple assault. Defense counsel agreed to this response.

The jury's fourth note asked: "1. Will aiding and abetting automatically give both defendants the greater crime? [¶] 2. CALCRIM 875 #1-5 describes assault w/a deadly weapon, with this information how do we include or use the rules for aiding & abetting." The court responded: "1. I am not sure what you are asking in question 1. 1. Could you please clarify. [¶] 2. When deciding if the defendant is guilty as a direct perpetrator of the crime charged, refer to CALCRIM #875. When deciding if a defendant is guilty as an aider and abettor of the charged crime refer to CALCRIM #401. When reading the term 'the crime' when referred to in elements #1 through #4 of CALCRIM #401 it means the crime of ASSAULT with a DEADLY WEAPON. When reading the term 'perpetrator,' it means the person or persons who personally used a deadly weapon." Although

8

both defense counsel had suggested that the court answer the first question "no" in addition to seeking clarification, they agreed to the court's response.

The jury's fifth note said: "If we decide one defendant is guilty and believe another person is guilty of a lesser offense, does the person of the lesser offense have to be charge [*sic*] the same as the other defendant because of CALCRIM 400 'two, he or she may have aided and abettor [*sic*] a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he or she committed it personally or aided & abetted…. [¶] 2. Can defendant [*sic*] be found guilty on the greater charge, if the defender [*sic*] aided and abetted the perpetrator?" The court responded to this note: "1. Please see CALCRIM 200 – 'Some of these instructions may not apply, depending on your findings about the facts…. After <u>you</u> have decided what the facts are, follow the instructions that do apply to the facts as you find them.' [Emphasis Added] So if you find that CALCRIM 400 applies to the facts as you find them, follow this instruction. [¶] 2. Yes. See CALCRIM 400." (Brackets in original.) All counsel agreed to this response.

The jury's final note read: "Question #1 about Calcrim 403. [¶] Item #3 'Under all of the circumstances etc etc etc….' Question is if the defendant (as stated in item #1) is required to know that the coparticipant had weapon? [¶] Question #2 is about calcrim 401 pg 102. [¶] Item #2 states 'The defendant <u>knew</u> that the Perpetrator intended to commit the crime.' Can you please expand on the definition of the word '<u>knew</u>'. [¶] Question #3 is follow up to question #2. Does the defendant have to know that the Perpetrator had a weapon?"

The court's response to the final note was: "1. No. It is not required that defendant actually know that the coparticipant had a weapon. So long as you find Assault with a Deadly Weapon was a natural and probable consequence of Simple Assault. [¶] In determining whether a consequence is 'natural and probable,' you must apply an objective test, based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected was likely to occur. The issue is to be decided in light of all the circumstances surrounding the incident. A 'natural' consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. 'Probable' means likely to happen. [¶] 2. Calcrim 401 requires that the defendant actually know that the perpetrator intended to commit the crime of Assault with a Deadly Weapon. [¶] 3. No. Calcrim 401 requires knowledge of the perpetrator's intent to commit an Assault with a Deadly Weapon." All counsel agreed to this response.

The jury found both defendants guilty of both charged counts of assault with a deadly weapon. It found not true the allegation that Montalbo had personally inflicted great bodily injury on Smith but true the allegation that Mata had personally inflicted great bodily injury on Aana. The prior conviction and prison prior allegations had been bifurcated, and Montalbo had waived his right to a jury trial on them. The court found those allegations true. Montalbo's motion to strike the strike findings was denied, and he was sentenced to 25 years to life on each count with the sentences to run concurrently to one another and consecutive to a

five-year determinate term for the serious felony enhancement. [FN3] The court struck the punishment for the prison prior. Mata was committed to state prison for a six-year term. Both of them timely filed notices of appeal.

> FN3. Although the minutes reflect that the court imposed on Montalbo the five-year determinate term for the section 667, subdivision (a) enhancement, the abstract of judgment fails to include that term. We will direct the trial court to prepare an amended abstract correcting this clerical error.

Op. at 5-10.

The state appellate court then rejected petitioner's claim that there was insufficient evidence to support either count:

## A. Sufficiency of the Evidence

Montalbo claims that neither count is supported by substantial evidence as to him. He claims that there was no evidence that he was the direct perpetrator or the aider and abettor of either assault with a deadly weapon and no evidence that assault with a deadly weapon was a natural and probable consequence of the simple assault that he committed….

### 1. Standard of Review

"The role of an appellate court in reviewing the sufficiency of the evidence is limited. The court must 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence – that is, evidence which is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] [¶] The same standard applies to the review of circumstantial evidence. [Citations.] The court must consider the evidence and all logical inferences from that evidence…. But it is the *jury*, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] Therefore, an appellate court may not substitute its judgment for that of the jury. If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139.)

### 2. Montalbo

Montalbo assumes that the jury did not find him to be the direct perpetrator of the assault with a deadly weapon on Smith because the jury found the personal infliction of great bodily injury enhancement allegation not true. This assumption is invalid. A jury may make inconsistent findings. "Inconsistent findings by the jury frequently result from leniency, mercy or confusion. [Citation.] Such inconsistencies in no way invalidate the jury's findings." (*People v. York* (1992)

11 Cal.App.4th 1506, 1510.)  Here, because Smith's injuries were much less serious than those of Aana, the jury may have believed that they did not amount to great bodily injury.  Therefore, it cannot be assumed that the jury did not find Montalbo to be the direct perpetrator of the assault with a deadly weapon on Smith.  Certainly there was sufficient evidence to support such a finding.  Smith testified that only Mata and Montalbo were involved in the second fight with him.  The only contact made by Mata with Smith was a single lunge, which Smith responded to by knocking Mata down.  Montalbo, on the other hand, hit Smith numerous times, and Smith felt contact with his chest.  Even more critically, a police officer saw Montalbo make a final punch to the center of Smith's upper chest that was the last contact anyone made with Smith before Smith discovered that he was bleeding from his chest.  And Smith's blood was found on Montalbo's clothing.  The jury could have reasonably concluded from this evidence that Montalbo was the person who stabbed Smith in the chest and therefore was the direct perpetrator of the assault with a deadly weapon on Smith.

On the other hand, the jury clearly did not find that Montalbo was the direct perpetrator of the assault with a deadly weapon on Aana because it found that Mata had personally inflicted great bodily injury on Aana, who suffered a single stab wound.  Thus, the jury must have concluded that Montalbo was guilty of assault with a deadly weapon on Aana under an aiding and abetting or natural and probable consequences theory.

"[A]n aider and abettor is a person who, 'acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promote, encourages or instigates, the commission of the crime.'"  (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.)  The aider and abettor's acts of aiding must be accompanied by knowledge and intent.

Montalbo does not claim that the evidence was insufficient to support a finding that his acts aided Mata's assault on Aana.  He challenges the sufficiency of the evidence to support a finding that he knew that Mata had a knife.  But no such knowledge was necessary for the jury to convict him of assault with a deadly weapon on Aana under a natural and probable consequences theory.  "[U]nder the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.' [Citation.]  Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault."  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.)  Even if Montalbo was unaware that Mata had a knife, he could be found guilty of assault with a deadly weapon for Mata's attack on Aana if assault with a deadly weapon was a natural and probable consequence of an assault on Aana that Montalbo knowingly aided and abetted.

Montalbo's argument comes down to an assertion that the jury could not have concluded that assault with a deadly weapon on Aana was a natural and probable consequence of a simple assault on Aana.  The jury was told that the test for

natural and probable consequence was "what a person of reasonable and ordinary prudence would have expected was likely to occur… in light of all the circumstances surrounding the incident.' That means that the likelihood that an assault with a deadly weapon would occur must be evaluated from the perspective of a reasonable person in Montalbo's shoes. Montalbo was the instigator of the initial fistfight during which Smith avoided Montalbo's attempt to punch him and knocked Montalbo down. Mata joined in but was no more successful than Montalbo. Smith and Aana simply walked away, and Montalbo, Mata, and the third man conferred with each other before racing after them. Because Montalbo used a weapon to stab Smith, the perspective of the reasonable person must be that a person possessing a deadly weapon and instigating a second confrontation with a man who had already bested him. A reasonable person in that position, that is, one who plans to escalate a confrontation with a person from a fistfight to an assault with a deadly weapon in order to overcome a mightier opponent, would understand that his compatriots who have agreed to join him in combat are equally likely to use a weapon in the battle. Even if Montalbo did not *know* that Mata had a knife, he *should have known* under these circumstances that Mata *was likely to use a weapon* in the second confrontation.

Op. at 10-13.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The Supreme Court has emphasized that sufficiency of the evidence types of "claims face a high bar in federal habeas proceedings . . ." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam) (finding that the Third Circuit "unduly impinged on the jury's role as factfinder" and failed to apply the deferential standard of *Jackson [v. Virginia*, 443 U.S. 307, 321 (1979)] when it engaged in "fine-grained factual parsing" to find that the evidence was insufficient to support petitioner's conviction). A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992); *see*, *e.g.*, *Coleman*, 132 S. Ct. at 2065 ("the only question under *Jackson* is whether [the jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality"). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338 (quoting *Jackson*, 443 U.S. at 319). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt,

has there been a due process violation. *Jackson*, 443 U.S. at 324.

After viewing the evidence in the light most favorable to the prosecution, the Court finds the state appellate court's rejection of this claim was not unreasonable. *Payne*, 982 F.2d at 338. Based on the record, the state appellate court reasonably found there was sufficient evidence to support the finding that petitioner was the direct perpetrator of the assault with a deadly weapon on Smith: (1) Smith testified that only petitioner and Mata were involved in the second fight with him; (2) the only contact made by Mata was a single lunge, to which Smith responded by knocking Mata down; (3) petitioner, on the other hand, hit Smith numerous times; (4) Smith felt petitioner punch his chest in the same location where he subsequently noticed he had a stab wound; (5) a police officer saw petitioner punch Smith in the center of his chest, which was the last contact anyone made with Smith before he discovered that he was bleeding; and (6) Smith's blood was found on petitioner's clothing. *See supra* at 3, 12. Based on this evidence, it cannot be said that *no* rational trier of fact could have found petitioner guilty of assault with a deadly weapon on Smith beyond a reasonable doubt. *Jackson*, 443 U.S. at 324 (emphasis added). Furthermore, the state appellate court reasonably rejected petitioner's argument that the jury could not have found him to be the direct perpetrator of assault with a deadly weapon on Smith based on their rejection of the enhancement allegation of personal infliction of great bodily injury because this might just mean the jury did not believe that Smith's injuries amounted to "great bodily injury," particularly since his injuries were much less serious than those of Aana. *Id.* at 12. Accordingly, the state court's rejection of this claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

### 2. Insufficient Evidence to Support Jury Instructions

Under claim 3, petitioner claims that the trial court erred in instructing the jury on aiding and abetting liability and natural and probable consequences because there was insufficient evidence to support those theories with respect to the assault on Aana. Pet. Attach. at 5B-5C. Petitioner asserts that there was insufficient evidence that he knew his co-participant had a knife

and intended to use it. *Id.* at 5C.

The state appellate court rejected this claim: "As we have already determined, there was substantial evidence to support these theories. Hence, we reject this contention." Op. at 14. The state appellate court was referring to its discussion of these theories under petitioner's preceding claim challenging the sufficiency of the evidence. *See supra* 12-14. The state appellate court rejected petitioner's argument that aiding and abetting liability required that he know that his co-defendant had a knife and intended to use it. *Id.* at 13. The state appellate court explained that the natural and probable consequences theory required the jury to consider "'what a person of reasonable and ordinary prudence would have expected was likely to occur… in light of all the circumstances surrounding the incident.'" *Id.* This Court is bound by the state appellate court's interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988). In accordance with state law, the state appellate court found that there was sufficient evidence that petitioner was guilty as an aider and abettor for the assault on Aana under the natural and probable consequences theory which required that the evidence by evaluated "from the perspective of a reasonable person in [petitioner's] shoes." *Id.* at 13. The evidence considered by the state appellate court, and reasonably so, is as follows: (1) petitioner was the instigator of the initial fistfight during which Smith knocked petitioner down; (2) Mata was no more successful than petitioner after he joined in; (3) while Smith and Aana walked away, petitioner conferred with Mata and a third man before racing after them; (4) because petitioner used a weapon on Smith, the perspective of a reasonable person "must be that of a person possessing a deadly weapon and instigating a second confrontation with a man who had already bested him"; (5) a reasonable person in that position is of one who "plans to escalate a confrontation with a person from a fistfight to an assault with a deadly weapon in order to overcome a mightier opponent'"; and (6) such a person "would understand that his compatriots who have agreed to join him in combat are equally likely to use a weapon in the battle." *Id.* Based on this evidence, it cannot be said that no rational trier of fact could have found petitioner guilty of aiding and abetting the assault with a deadly weapon on Aana based on the theory of natural and probable consequences beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. It follows that the trial court did not err by

giving the instructions on aiding and abetting liability and natural and probable consequences.

Accordingly, the state court's rejection of this claim was not contrary to, and did not involve an

unreasonable application of, Supreme Court precedent, and was not based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.  28

U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

### 3.    Jury Instructions

Under claim 1, petitioner claims that the trial court erred in instructing the jury on aiding

and abetting by misstating the elements of the charge.  Pet. Attach. at 5A.

The state appellate court rejected this claim on direct appeal:

Defendant argues that the trial court prejudicially erred in instructing the jury in
CACLRIM No. 400 that an aider and abettor and the perpetrator are "equally
guilty" and in responding to the jury's fifth note asking about that portion of the
instruction.

The version of CALCRIM No. 400 given by the trial court, which provided the
jury with general principles applicable to aiding and abetting, stated: "A person is
[equally] guilty of the crime whether he or she committed it personally or aided
and abetted the perpetrator who committed it."  [FN4]  CALCRIM No. 401 told
the jury how to decide whether a defendant aided and abetted a crime.  The court
explicitly told the jury that, when the aiding and abetting instructions used "the
term 'the crime'… it means the crime of ASSAULT with a DEADLY
WEAPON."  Consequently, the jury was fully informed that aiding and abetting
was crime-specific.  The jury's fifth note asked whether the "equally guilty"
phrase meant that someone who committed a lesser offense could be found guilty
of the greater offense based on aiding and abetting another defendant who
committed the greater offense.  The trial court's neutral response told the jury that
it depended on what the jury found the facts to be and referred the jury back to
CALCRIM No. 400.

> FN4.  The current version of CALCRIM No. 400 no longer contains the
> "equally guilty" language.

We find no infirmity in the instruction on the trial court's response to the jury's
note.  The court's response to the jury, that the question of whether a defendant
guilty of a lesser offense was liable for the greater offense depended on the facts,
necessarily informed the jury that a defendant's guilt of a *lesser* offense did *not*
make him "equally guilty" of the greater offense *unless* he was *also* an aider and
abettor of the greater offense.  In fact, this theme ran through all of the court's
responses to the jury's notes.  The court's response to the jury's fourth note told
the jury that, "when deciding if a defendant is guilty as an aider and abettor of the
charged crime refer to CALCRIM #401.  When reading the term 'the crime' when

referred to in elements #1 through #4 of CALCRIM #401 it means the crime of ASSAULT with a DEADLY WEAPON." The court's response to the jury's final note told the jury that a defendant could be found to be an aider and abettor of assault with a deadly weapon only if he knew that the perpetrator intended to commit an assault with a deadly weapon. Under these circumstances, the "equally guilty" language in former CALCRIM No. 400 could not have misled the jury to believe that it could find that a defendant who committed a lesser offense was guilty of the charged greater offense without finding that the defendant had aided and abetted the greater offense (or the greater offense was a natural and probable consequence of the lesser offense).

This is not a case like *People v. Nero* (2010) 181 Cal.App.4th 504 (*Nero*) where the court's "equally guilty" instruction and other instructions misled the jury to believe that an aider and abettor to a killing could not be found guilty of a lesser offense (such as manslaughter) where the perpetrator committed murder. In *Nero*, it was possible that the aider and abettor had a less culpable mental state. Here, the court's instructions and responses to the jury's notes made clear that an aider and abettor was liable for an assault with a deadly weapon committed by the perpetrator only if assault with a deadly weapon was the crime aided and abetted or assault with a deadly weapon was the natural and probable consequence of a simple assault aided and abetted.

Op. at 14-15.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 78 (1991); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even 'universally condemned,' but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury and as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988); *see, e.g.*, *Middleton v. McNeil*, 541 U.S. 433, 434-35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law).

The relevant inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a manner that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the Court also must then determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146-47.

The state appellate court's rejection of this claim was not unreasonable. As explained in its opinion, the jury was instructed with both CALCRIM No. 400, which gave the general principles applicable to aiding and abetting, as well as CALCRIM No. 401, which told the jury how to decide whether a defendant aided and abetted a crime. *See supra* at 17. With respect to the applicable crime, the court explicitly told the jury that the specific crime was "Assault with a Deadly Weapon." *Id.* Considering these instructions together, the state appellate court reasonably determined that the jury was "fully informed that aiding and abetting was crime-specific." *Id.*

Petitioner takes issue with the trial court's response to the jury's fifth note asking whether the "equally guilty" phrase of CALCRIM No. 400 meant that a person "guilty of a lesser offense" would "have to be charge[d] the same as the other defendant," and if a defendant could "be found guilty on the greater charge, if the defender [*sic*] aide and abetted the perpetrator." *See supra* at 10. Petitioner asserts that the jury's inquiry "suggest[ed] that they had concluded that I did not know that my companion carried a knife, that they saw me as guilty only of simple assault, and that they were uncertain about whether they had to find me equally guilty because of the wording of the instruction." Pet. Attach. at 5A. However, this is pure speculation on petitioner's part, and the significance, if any, of his knowledge as to whether Mata was carrying a knife was later clarified. As respondent points out, the jury's sixth and final note revealed the true source of the confusion: the jury was uncertain whether petitioner had to know that Mata had a knife in order to be found guilty of aiding and abetting assault with a deadly weapon. Ans. at 14; *see supra* at 10.

There was no infirmity, and petitioner does not allege any, with the trial court's response to the sixth note by explaining that a defendant did not have to actually know that the coparticipant had a weapon "[s]o long as you find assault with a deadly weapon was a natural and probable consequence of simple assault." *See supra* at 10. The trial court then provided the definition of a natural and probable consequence, which is consistent with the one applied by the state appellate court in rejecting petitioner's insufficiency of the evidence claim on the aiding and abetting charge discussed above. *Id.* at 13-14. The state appellate court reasonably found that the court's response to the last jury note "told the jury that a defendant could be found to be an aider and abettor of assault with a deadly weapon only if he knew that the perpetrator intended to commit an assault with a deadly weapon." *Id.* at 17. Considering the alleged instructional error in the context of the instructions as a whole and the overall charge to the jury, it cannot be said that the jury was misled by the "equally guilty" language of CALCRIM No. 400 such that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72, 78; *Frady*, 456 U.S. at 169.

Furthermore, even if the trial court erred in its response to the jury's fifth note as petitioner alleges, it cannot be said that the error had a substantial and injurious effect or influence on the jury's verdict. *Calderon*, 525 U.S. at 146-47. As discussed above, any confusion with respect to intent was cleared up by the trial court's response to the jury's sixth note, which expressly asked whether petitioner had to know that Mata had a weapon to be found guilty of aiding and abetting the assault with a deadly weapon. *See supra* at 10. Petitioner does not raise any challenges to that response, which correctly instructed the jury that a defendant need not have known that the perpetrator had a weapon, only that he know that the perpetrator intended to commit the crime of assault with a deadly weapon. *Id.* at 10-11.

Based on the foregoing, the state court's rejection of this claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

//

//

### 4. Cumulative Prejudice

Petitioner's last claim on direct review was cumulative prejudice. The state appellate court did not address this claim in its opinion although it was raised on direct appeal. Ex. 6 at 17. The claim was also raised in the petition for review before the state high court, which denied the petition. Exs. 12 and 13.

It has been held that in some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). Where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011); *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002); *Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

The Court has found that none of the claims discussed above have merit. Accordingly, petitioner has failed to show cumulative prejudice to warrant federal habeas relief. *See Hayes*, 632 F.3d at 524. Accordingly, the state court's rejection of this claim was not contrary to, and did not involve an unreasonable application of, Supreme Court precedent. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

### 5. <u>Sentencing Error</u>

Petitioner claimed for the first time in a state habeas petition that his right to due process and a jury trial were violated when the trial court failed to strike one of the prior strikes on the grounds that they all stemmed from a single act. As mentioned above, the state high court denied this petition with citations to *People v. Duvall*, 9 Cal.4th 464, 474 (1995), and *In re Swain*, 34 Cal.2d 300, 304 (1949).[5] *See supra* at 6; Ex. 15.

---

[5] The Court notes that these citations indicate an issue of procedural default. *See Cross v. Sisto*, 676 F.3d 1172, 1178 (9th Cir. 2012) (where a state high court denies a state petition without comment but with citations to *Swain* and *Duvall*, the indication is that the habeas petition was procedurally deficient); *see also Curiel v. Miller*, No. 11-56949, slip op. at 9, 13 (9th Cir. July 25,

Respondent first asserts that this claim is not cognizable on federal habeas. The Court agrees that to the extent that petitioner is asserting that the state courts, in rejecting this claim, misapplied state law, the claim is not cognizable. The Supreme Court has repeatedly held that the federal habeas writ is unavailable for violations of state law or for alleged error in the interpretation or application of state law. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861-62 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994). The fact that petitioner bases this claim on an alleged "Vargas error" by the trial court further supports the conclusion that the claim is based solely on state law. As respondent points out, *Vargas* is a California Supreme Court decision which held that when two prior strike convictions are based on the same act, the trial court is required to dismiss one of the convictions. Ans. at 17, citing *People v. Vargas*, 5 Cal.4th 635, 640 (2014). Furthermore, a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Here, petitioner's citation to *Townsend v. Burke*, 334 U.S. 736 (1948), is such an effort and is not persuasive.[6] Pet. Attach. A at 4.

Even assuming that petitioner has stated a cognizable due process claim, he is not entitled to federal habeas relief. Federal courts must defer to the state courts' interpretation of state sentencing laws. *See Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify

2016) (en banc) (California Supreme Court denial with citations to *Swain* and *Duvall*, but no citation to an untimeliness case, means petition was dismissed as insufficiently pleaded). However, respondent has waived a procedural default argument by failing to raise it. *Brown v. Maass*, 11 F.3d 914, 914-15 (9th Cir. 1993).

[6] The petitioner in *Townsend* pleaded guilty, was not represented by counsel nor advised of his right to counsel, nor instructed with particularity of the crime with which he was charged, and was sentenced on the basis of assumptions concerning his criminal record, either through misinformation or misreading of the record, that were materially untrue. 334 U.S.at 739-741. The Supreme Court found the lack of counsel deprived petitioner of "fair play," because counsel could have taken steps to "see that the conviction and sentence were not predicated in misinformation or misreading of court records." *Id.* at 741. In the case at bar, petitioner's case is factually distinguishable from *Townsend* as he did not plead guilty, he was represented by counsel, and there is no indication that the trial court considered facts from petitioner's prior convictions that were materially untrue.

federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see, e.g.*, *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (whether assault with deadly weapon qualifies as "serious felony" under California's sentence enhancement provisions, Cal. Penal Code §§ 667(a) and 1192.7(c)(23), is question of state sentencing law and does not state constitutional claim). Here, petitioner has failed to make a showing of fundamental unfairness to warrant habeas relief. At the sentencing hearing, trial counsel made a *Romero*[7] motion for the court, "in its discretion," to strike two of the three strikes, or alternatively, to run the sentences concurrently because the strike priors arose out of the same conduct. RT 1200-1201. The prosecution opposed the motion based on the nature of the prior offenses: they were violent, involved a weapon and endangered the safety of members of society.[8] RT 1202. The prosecution also pointed out that petitioner thereafter violated parole more than once, and was on parole when he committed the underlying crimes. *Id.* After considering the parties' arguments, the trial court denied the *Romero* motion, finding petitioner was not "outside the spirit of the [three strikes] law" in light of the fact that the priors were only ten years old, petitioner had spent most of that time incarcerated, and he was on parole when he committed the underlying offenses. *Id.* at 1203-1204. The trial court also decided to impose concurrent rather than consecutive sentences because the two counts arose out of the same set of operative facts. *Id.* at 1204. On this record, the Court is not persuaded that the trial court actually misapplied state sentencing laws in denying the *Romero* motion such that the sentence imposed was fundamentally unfair. *See Rhode*, 41 F.3d at 469.

Accordingly, the state courts' rejection of this claim was not an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts in light of the

---

[7] *People v. Superior Court*, 13 Cal.4th 497, 508 (1996) (interpreting California Penal Code section 1385(a) as permitting a trial court, on its own motion, to strike prior felony conviction allegations in a case brought under the Three Strikes Law). (Ans. at 16, fn. 4.)

[8] Petitioner was 19 years old when he committed the three prior strike convictions. At that time, he arrived at his girlfriend's house and asked her to hold a gun for him. Several people, including petitioner's children, were present at the house. When his girlfriend refused to take the gun, petitioner became upset and pointed the gun at another relative, threatening to kill him. Petitioner then raised the gun up and fired a shot. He fled the scene, after which the police were called. Petitioner later called his girlfriend's aunt and accused her of calling the police; he threatened to return to the house to kill her. (Ans. at 17, citing CT 573.) Petitioner pled guilty to two counts of assault with a firearm and one count of making a criminal threat. (*Id.*)

United States District Court
Northern District of California

evidence presented.  28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

### 6.    Ineffective Assistance of Counsel

Petitioner claims that appellate counsel rendered ineffective assistance for failing to raise the alleged "Vargas error" by the trial court on appeal.

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Moormann v. Ryan*, 628 F.3d 1101, 1106 (9th Cir. 2010); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).  First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue.  *Smith*, 528 U.S. at 285; *Moormann*, 628 F.3d at 1106.  Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal.  *Smith*, 528 U.S. at 285-86; *Moormann*, 628 F.3d at 1106.

Petitioner fails to show the first prong, i.e., that appellate counsel unreasonably failed to brief a merit-worthy issue.  *Smith*, 528 U.S. at 285.  As respondent points out, petitioner's argument that his prior convictions arose from the "same act" is simply incorrect.  Ans. at 18.  The simple fact that petitioner pleaded guilty to and was convicted of three separate counts based on his underlying actions contradicts this argument.  Furthermore, the record demonstrates that after his girlfriend refused to store the gun at her house, petitioner "cursed everyone and threatened to kill them.  He aimed the gun at them, and while still pointing the gun at the group – that included [his girlfriend] and the two children he had with her – he walked to the gate.  There he raised the gun up and fired shots."  CT 564.  Petitioner later called his girlfriend's aunt, accused her of calling the police, and threatened to return and kill her.  *Id.* at 573.  These facts clearly show that petitioner committed a series of separate acts, not one "same act" as he contends.  Accordingly, it cannot be said that a claim of "Vargas error" by the trial court was merit-worthy.  Furthermore, it cannot be said that had appellate counsel raised such a meritless claim, petitioner would have prevailed in his appeal.  *Smith*, 528 U.S. at 285-86.

United States District Court
Northern District of California

Based on the foregoing, the state courts' rejection of this claim was not an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

C.     **Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. Id. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV. CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

Dated:   6/21/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge